UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


GEORGE SOHL and
SONIA SOHL,

     Plaintiffs,


vs.                       CASE NO. 8:13-cv-00200-EAK-AEP


LIBERTY MUTUAL FIRE
INSURANCE COMPANY,

     Defendants.

_____/

## ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

This matter is before the Court upon consideration of a motion for summary

judgment filed by the defendant, Liberty Mutual Fire Insurance Company ("Liberty"); a

response in opposition filed by the plaintiffs, George and Sonia Sohl ("the Sohls"); a

motion for summary judgment filed by the Sohls; and finally, a response in opposition

filed by Liberty. For the reasons set forth below, both motions for summary judgment are

**DENIED**.

## PROCEDURAL HISTORY

On December 7, 2012, the Sohls filed a complaint against Liberty alleging a

breach of contract for homeowner's insurance and demanding damages with interest,

attorney's fees, and costs. (Dkt. 2). Liberty filed a response and a counterclaim on

January 13, 2013, which alleged that the damage to the Sohls' property was not covered by their policy. (Dkt. 3). Liberty then filed a motion for summary judgment on its counterclaim, requesting a declaration from the Court that the definition of "structural damage," the term used in the Sohl's 2010 policy, included the technical definition of the term that was added in 2011 to Florida's sinkhole insurance statute. Fla. Stat. § 627.706 (2011). In reply, the Sohls filed both a response in opposition and a cross-motion for summary judgment seeking final judgment on their claim against Liberty, to which Liberty filed a response in opposition. (Dkt. 18–20).

## FACTUAL BACKGROUND

In October of 2010, Liberty issued an insurance policy to the Sohls, which read in pertinent part:

SECTION I - PERILS INSURED AGAINST
The following perils are added:

**Sinkhole Loss**
a. Sinkhole Loss means structural damage to the building, including the foundation, caused by sinkhole activity. Contents coverage shall apply only if there is structural damage to the building caused by sinkhole activity.

(1) We will pay to stabilize the land and building and repair the foundation in accordance with the recommendations of a professional engineer and in consultation with you.

b. Sinkhole Activity means settlement or systematic weakening of the earth supporting such property only when such settlement or systematic weakening results from movement or raveling of soils, sediments, or rock materials into subterranean voids created by the effect of water on limestone or similar rock formation.

2

(Dkt. 15). In April of 2011, while covered by the above policy, the Sohls discovered cracks in the walls, ceilings, floors, and driveway of their home; they filed a claim for sinkhole damage with Liberty in May of 2011. (Dkt. 16-1).  Liberty retained Rimkus Consulting Group, which sent engineers to investigate the damage on the Sohl's property. (Dkt. 15). While the Rimkus engineers did document damage to the Sohls' home, they classified it as "architectural" only; that is, the damage to the Sohls' home was not structural, according to the definition of "structural damage" contained in Section 627.706 of the *2011* Florida Statutes. (Dkt. 16-1). The Rimkus engineers additionally found that what damage was observable at the Sohls' home was the result, not of sinkhole activity, but of various other forces such as thermal expansion or contraction of building materials and settlement of the soil. *Id.* Based on this report, Liberty denied the Sohls' claim. (Dkt. 16-2).

In response, the Sohls hired their own engineers from Bay Area Sinkhole Investigation and Civil Engineering ("B.A.S.I.C.") to investigate the property. These engineers found that, while some of the damage to the property may have been the result of shrinkage or settling, there was evidence of sinkhole activity in the area and the activity was a cause of the damage. (Dkt. 16-3). The Sohls submitted this report to Liberty, which reaffirmed its denial of their claim. The Sohls then commenced the instant action.

## DISCUSSION

### A.  Standard of Review for Summary Judgment

Summary judgment is appropriate if the evidence shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The movant must first state the basis for its motion and identify those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–324 (1986). However, that burden can be discharged if the movant can demonstrate that the nonmovant lacks evidence to support her case. *Id.* at 323, 325. When the movant has discharged its burden, the nonmovant must then specifically show that there is a genuine issue of material fact. *Id.* at 324.

Issues of fact are "'genuine' only if a reasonable jury considering the evidence presented could find for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). Material facts are those that will affect the outcome of the trial under governing law. *Id.* at 248.

The court may not weigh the credibility of the parties on summary judgment. *Rollins v. TechSouth, Inc.,* 833 F.2d 1525, 1531 (11th Cir.1987). If the determination of the case rests on which competing version of the facts or events is true, the case should be submitted to the trier of fact. *Id.*

### B.  Defendant's Motion for Summary Judgment

Liberty argues that the technical definition of "structural damage" that was added to the Florida Statutes in May of 2011 applies to an insurance policy it issued in October

4

of 2010. (Dkt. 15). At the time the policy was issued, the Florida Statutes defined

"structural damage" in a way that was much more inclusive than the 2011 Amendments

allowed. In 2010, "sinkhole loss" was defined as "structural damage to the building,

including the foundation, caused by sinkhole activity," with no further elucidation as to

what made damage "structural." Fla. Stat. § 627.706 (2010). After the amendments to the

Statutes in 2011, the same section read:

> (j) "Sinkhole loss" means structural damage to the covered building,
> including the foundation, caused by sinkhole activity. Contents coverage
> and additional living expenses apply only if there is structural damage to
> the covered building caused by sinkhole activity.
>
> (k) "Structural damage" means a covered building, regardless of the date
> of its construction, has experienced the following:
>
>> 1. Interior floor displacement or deflection in excess of acceptable
>> variances as defined in ACI 117-90 or the Florida Building Code,
>> which results in settlement-related damage to the interior such that the
>> interior building structure or members become unfit for service or
>> represents a safety hazard as defined within the Florida Building Code;
>>
>> 2. Foundation displacement or deflection in excess of acceptable
>> variances as defined in ACI 318-95 or the Florida Building Code,
>> which results in settlement-related damage to the primary structural
>> members or primary structural systems that prevents those members or
>> systems from supporting the loads and forces they were designed to
>> support to the extent that stresses in those primary structural members
>> or primary structural systems exceeds one and one-third the nominal
>> strength allowed under the Florida Building Code for new buildings of
>> similar structure, purpose, or location;
>>
>> 3. Damage that results in listing, leaning, or buckling of the exterior
>> load-bearing walls or other vertical primary structural members to
>> such an extent that a plumb line passing through the center of gravity
>> does not fall inside the middle one-third of the base as defined within
>> the Florida Building Code;
>>
>> 4. Damage that results in the building, or any portion of the building
>> containing primary structural members or primary structural systems,

being significantly likely to imminently collapse because of the movement or instability of the ground within the influence zone of the supporting ground within the sheer plane necessary for the purpose of supporting such building as defined within the Florida Building Code; or

5. Damage occurring on or after October 15, 2005, that qualifies as "substantial structural damage" as defined in the Florida Building Code.

Fla. Stat. § 627.706 (2011). This definition is plainly more exclusive, and in fact was advanced specifically for the purpose of "reduc[ing] the number and cost of disputes relating to sinkhole claims." Laws of Florida, Ch. 2011-39, 58.

Liberty, however, argues that the new definition is simply a clarification of the pre-existing definitions, rather than a revision that substantially reduces the rights of the parties insured under its policy. Liberty invites this Court to reconsider its ruling in another case that dealt with the application of the 2011 Amendments to an insurance policy that was issued before their passage. In that case, this Court held that "the definition of 'structural damage' in the 2011 Amendment cannot be applied retroactively to narrow the scope of coverage afforded" to the insured. *Bay Farms Corp. v. Great Am. Alliance Ins. Co.*, 835 F.Supp.2d 1227, 1243 (M.D. Fla. 2011). In that case, we found that applying the new definition to an old sinkhole insurance policy would "effectively extinguish [the insured's] rights." *Id.* Such a result is not permissible under Florida's Constitution: the insured parties bargained for certain sinkhole coverage, and the law may not divest them of that coverage without due process. *See id.* at 1241–1242.

Liberty also disagrees with the result of *Ayres v. USAA Casualty Company*, which involved another insurance company's denial of a sinkhole loss claim. In that case, as in

6

this one, "structural damage" was not defined in the policy (as Liberty concedes). 2012 WL 1094321 at *3 (M.D. Fla. Apr. 2, 2012); Dkt. 15. In that case, this Court held that the phrase "structural damage," when otherwise left undefined in the policy, was to be interpreted according to the "plain and ordinary meaning of 'damage to the structure.'" *Id.* at *4.

Liberty would have this Court disregard both of those cases, as well as a number of nearly identical cases that have been decided the same way in recent months by this Court. *E.g. Leon v. First Liberty Ins. Corp.*, 2012 WL 5417294 (M.D. Fla. Nov. 6, 2012); *Garcia v. First Liberty Ins. Corp.*, 2012 WL 5328660 (M.D. Fla. Oct. 29, 2012); *Zawadzki v. Liberty Mut. Fire Ins. Co.*, 2012 WL 3656456 (M.D. Fla. Aug. 23, 2012); *Shelton v. Liberty Mut. Fire Ins. Co.*, 2013 WL 1663290 (M.D. Fla. Apr. 17, 2013). The Court declines to reconsider its previous rulings, and holds that the definition of "structural damage" introduced in the 2011 Amendments does not apply to the Sohls' policy; instead, the plain meaning of the phrase, "damage to the structure," shall apply.

## C. Plaintiff's Motion for Summary Judgment

In their motion for final summary judgment, the Sohls argue that the Court should find, as a matter of law, that their property damage was covered under the policy. Liberty argues that genuine issues of material fact exist that preclude summary judgment. Specifically, it points out that its experts determined that the damage, structural or not, was caused by factors other than sinkhole activity. (Dkt. 16-1). This assertion stands in direct conflict with the assertion of the Sohls' experts, who found not only that sinkhole activity existed on the Sohls' property, but also that it was a cause of the damage to the

7

home. Since coverage under the insurance plan is predicated on the structural damage being the result of sinkhole activity, this issue could change the outcome of the case. The Court finds this to be the very definition of a material factual dispute, which makes summary judgment on this matter inappropriate at this time.  Accordingly, it is

**ORDERED** that Liberty's motion for summary judgment (Dkt.15) and the Sohls' cross-motion for summary judgment (Dkt. 18) are **DENIED**.

**DONE AND ORDERED** in Chambers at Tampa, Florida, this ___9th___ day of July, 2013.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

8